IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TYRONE M. ADKINS, | ) |
|                 Petitioner, | ) |
| v. | ) C.A. No. 17-881 (MN) |
| TRUMAN MEARS, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | ) |
|                 Respondents.[1] | ) |

**MEMORANDUM OPINION**[2]

Tyrone M. Adkins. *Pro se* Petitioner.

Kathryn Joy Garrison, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE. Attorney for Respondents.

September 25, 2020
Wilmington, Delaware

---

[1] Warden Truman Mears replaced former Warden Robert May, an original party to the case. *See* Fed. R. Civ. P. 25(d).

[2] This case was re-assigned from the Honorable Gregory M. Sleet's docket to the undersigned's docket on September 20, 2018.

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Tyrone M. Adkins ("Petitioner"). (D.I. 1). The State filed an Answer in opposition. (D.I. 42). For the reasons discussed, the Court will deny the Petition.

## I.     BACKGROUND

As set forth by the Delaware Supreme Court in an opinion concerning Petitioner's direct appeal, the facts leading up to his arrest, convictions, and sentences are as follows:

> On six separate occasions in 2014, [Petitioner] sold heroin to an undercover Delaware State Police Officer, Detective Reynolds, which resulted in two separate indictments and two separate trials. The first trial addressed the first three drug purchases, and a second trial addressed the last three drug purchases. [. . .]
>
> At [the first] trial, [Petitioner] asserted that the police carelessly mishandled the drug evidence after they obtained it in the drug deals. The State called Detective Reynolds, Sergeant Rementer, and an NMS Labs employee to establish chain of custody. Detective Reynolds testified that in each of the three transactions, the drugs were placed in a labeled evidence envelope, sealed with evidence tape that was initialed and dated, and placed in an evidence locker. Sergeant Rementer testified that she assisted Detective Reynolds in packaging the drug evidence and that she followed the same packaging procedure.
>
> NMS Labs tested the drugs. The NMS Labs employee testified that she and a second employee received evidence from the police in two sealed cardboard boxes. The evidence in the boxes apparently pertained to a number of different cases. Each box contained an inventory sheet identifying the drugs contained within that box. One of the boxes contained an inventory sheet indicating that it contained [Petitioner's] drugs. However, [Petitioner's] drugs were not in that box. The three [. . .] drug envelopes [for Petitioner's case] were in the other box, although they were not listed on the inventory for that box. As they looked at what was before them, the NMS employees realized that the inventory sheets had been placed in the wrong boxes. In other words, the inventory sheet in one box should have been in the other box and vice versa. The employees switched the inventory sheets to the correct box and noted the mix-up in their files. The NMS employee also testified that the police filled out the NMS property receipt and chain of custody forms improperly.

1

> [Petitioner] requested a jury instruction on chain of custody. It read as follows:
>
>> The State is obligated to account for its careful custody of the evidence from the moment the State is in receipt of the evidence until trial. The State need not, however, prove beyond all possibility of a doubt the identity of the evidence. The State must prove that the evidence tested was the evidence seized beyond a reasonable doubt. If you determine that the State did not prove beyond a reasonable doubt that the drugs in evidence were seized from the Defendant, you must find the Defendant not guilty.
>
> The trial court declined to give the requested instruction and instead gave one that it referred to as being in its "bank of instructions." The instruction stated:
>
>> The State is obligated to account for its careful custody of the evidence from the moment the State is in receipt of the evidence until trial. The State need not, however, prove beyond all possibility of a doubt the identity of the evidence or the improbability of tampering; it need only prove that no tampering occurred.  In order for you to find the defendant guilty of drug dealing, the State must nevertheless prove, beyond a reasonable doubt, that the drugs introduced into evidence were the drugs seized from the defendant at the time of his arrest.

*Adkins v. State*, 149 A.3d 517 (Table), 2016 WL 5940363, at *1-2 (Del. Oct. 12, 2016).  Petitioner objected to the instruction, which the trial court overruled.  *Id*. at *3.  The jury convicted Petitioner on all three charges of drug dealing.  *Id*.

At the second trial, Detective Reynolds testified that he had made undercover purchases of heroin from [Petitioner] on three occasions in August, September and October of 2014.  (D.I. 10 at 5).  The State presented the testimony of Detective Reynolds, Detective Sean Callaway and two NMS Labs forensic chemists to establish the chain of custody of the drugs.  *Id*.  None of the witnesses testified to any problems with transfer, tampering, or testing of the drugs.  *Id*.  The forensic chemists testified that they tested representative samples of the bags submitted and

2

confirmed they contained heroin. *Id.* A Delaware Superior Court jury convicted Petitioner of drug dealing and two counts of drug dealing with an aggravating factor. (D.I. 10 at 1).

On October 9, 2015, the Superior Court sentenced Petitioner for both cases as a habitual offender to forty years at Level V incarceration, suspended after twelve years and successful completion of the Key drug treatment program for decreasing levels of supervision. (D.I. 10 at 2). Petitioner appealed both cases, and the Delaware Supreme Court affirmed all of Petitioner's convictions and sentences. (D.I. 10 at 2). *See also*, *Adkins v. State*, 148 A.3d 688 (Table), 2016 WL 5539885 (Del. Sept. 29, 2016) (appeal from Petitioner's second trial and conviction on three counts of drug dealing); *Adkins v. State*, 149 A.3d 517 (Table), 2016 WL 5940363 (Del. Oct. 12, 2016) (appeal from Petitioner's first trial and conviction on one count of drug dealing and two counts of drug dealing with an aggravating factor).

While Petitioner's cases were pending on appeal, the State provided defense counsel with information regarding a Delaware Division of Forensic Science chemist, Bipin Mody, who resigned from employment there after being told he was soon to be terminated for systematic failure to follow laboratory policies and procedures. (D.I. 3-1 at 9). The information related to another one of Petitioner's cases – Superior Court Criminal Case No. 1502009963 – which is not one of the two cases at issue here. (D.I. 13-17). Defense counsel wrote to Petitioner informing him about this development and stated that it may be relevant to the chain of custody in his cases pending on appeal. (D.I. 3-1 at 9).

On November 15, 2016, Petitioner filed a timely motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), captioned in both cases. (D.I. 13-16). On December 7, 2016, the Superior Court summarily dismissed Petitioner's Rule 61 motion. (D.I. 13-17). Petitioner did not appeal the dismissal of Rule 61 motion.

3

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>  (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

4

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner

5

must show "that the errors at his trial [] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  If a petitioner attempts to excuse his default on the basis of ineffective assistance of counsel, he can satisfy the prejudice component of the "cause and prejudice" standard by meeting the prejudice standard needed to establish ineffective assistance of counsel under *Strickland*.  *See Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.  *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001).  A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray,* 477 U.S. at 496.  Actual innocence means factual innocence, not legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998).  In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### III.    DISCUSSION

Petitioner's timely filed Petition appears to assert five ineffective assistance of counsel claims: (1) defense counsel in his first trial provided ineffective assistance by failing to file a Rule 61 motion or motion to modify sentence in any of the three situations: (a) before filing a direct appeal; (b) at any time; or (c) once counsel received the information from the State regarding Bipin Mody; (2) defense counsel in his first trial provided ineffective assistance by: (a) inadequately arguing evidence tampering at trial; and (b) giving Petitioner incorrect information in telling him to argue in the Rule 61 proceeding that the State provided him with late *Brady v. Maryland*

information regarding the chain of custody in his case; (3) defense counsel in his first trial provided ineffective assistance for objecting to the trial court's chain of custody jury instruction; (4) defense counsel in his second trial provided ineffective assistance by failing to adequately cross-examine Detective Reynolds; and (5) defense counsel in the second trial provided ineffective assistance by failing to adequately argue that the forensic lab tampered with the evidence in his case. (D.I. 3).

The record reveals that Petitioner did not exhaust state remedies for the instant five Claims because he did not present them to the Delaware Supreme Court on post-conviction appeal. At this juncture, any attempt by Petitioner to raise these Claims in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and barred as second or successive under Delaware Superior Court Criminal Rule 61(i)(2). *See Folks v. Phelps*, 2009 WL 498008, at *12 (D. Del. Feb. 26, 2009) (barred as untimely under Rule 61(i)(1)); Del. Super. Ct. Crim. R. 61(i)(2) (barring second or successive motion unless certain pleading requirements are satisfied). []"). Because there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rule 61(i)(1) and (2) apply in this case,[3] any attempt to exhaust state remedies would be futile. Given this futility, the Court must treat Claims One, Two, Three, Four, and Five as technically exhausted but procedurally defaulted. Therefore, the Court cannot review the merits of the instant five Claims absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

---

[3] Delaware Superior Court Criminal Rule 61(d)(2) and (i)(5) provide that the procedural bars to relief in Rule 61(i)(1), (2), (3), and (4) do not apply to a claim that the court lacked jurisdiction or if the petitioner pleads with particularity either that (1) new evidence exists that creates a strong inference that he is actually innocent or (2) a new rule of constitutional law, made retroactive on collateral review, applies to his case and renders his conviction invalid. *See* Del. Super. Ct. Cr. R. 61(d)(2) and (i)(5). Petitioner does not allege a valid claim of actual innocence, and he does not allege a lack of jurisdiction or that a new rule of constitutional law applies to his Claims.

Petitioner does not assert any reason for his default of Claims One through Five. To the extent the Court should construe Claim One's assertion that defense counsel from Petitioner's first trial was ineffective for not filing a Rule 61 motion as an attempt to establish cause for his procedural default of the other four claims, the attempt is unavailing. First, claims alleging ineffective assistance of trial and appellate counsel cannot establish cause for a procedural default unless they were first presented to the state courts as independent claims establishing that counsel did provide ineffective assistance. *See Murray*, 477 U.S. at 489. Because Petitioner did not present any of the instant five claims to the Delaware Supreme Court, all five of the ineffective assistance of counsel allegations are themselves procedurally defaulted, which means that none of them can excuse Petitioner's procedural default of the others. *See Edwards*, 529 U.S. at 453-54.

Second, it is well-established that the Sixth Amendment right to counsel only extends to trial and "the first appeal of right," and does not extend to post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 55 (1987). Consequently, trial and/or appellate counsel cannot be ineffective for failing to pursue post-conviction collateral relief during his trial. As for Petitioner's contention that trial and/or appellate counsel is ineffective for failing to file a Rule 61 motion "at any time," Petitioner does not assert that trial and/or appellate counsel was retained or agreed to represent Petitioner during the Rule 61 proceeding.

Finally, *Martinez v. Ryan*, 566 U.S. 1, 12, 16-17 (2012), does not provide an avenue for Petitioner to establish cause. In *Martinez*, the Supreme Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state did not appoint counsel in the initial-review collateral proceeding, that the underlying ineffective assistance of trial counsel claim is substantial, and that he was prejudiced. *Id*. at 14-17. A "substantial" ineffective assistance

8

of trial counsel claim is one that has "some" merit which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability. *See Martinez*, 566 U.S. at 13. Significantly, the *Martinez* court explicitly limited its ruling, stating that the "holding in this case does not concern errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." *Id*. at 16. The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id*. at 11.

Here, the *Martinez* rule does not provide a method for establishing cause for Petitioner's default of the instant five claims. Notably, *Martinez* did not establish that there is a constitutional right to counsel in collateral proceedings, *see Coleman*, 501 U.S. at 752, and Petitioner's "[f]ailure to file a contemporaneous request for appointment of counsel with the movant's postconviction motion may be deemed a waiver of counsel." Del. Super. Ct. Crim. R. 61(e)(1).

In the absence of cause, the Court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One, Two, Three, Four, and Five as procedurally barred from habeas review.

## IV. <u>PENDING MOTION</u>

During the pendency of this case, Petitioner filed a Motion For Copy of Entire State Record. (D.I. 19). The State responded, asserting that it has mailed a copy of the portion of the state record to which Petitioner is entitled. (D.I. 20). Therefore, the Court will deny the Motion as moot.

9

### V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

### VI. CONCLUSION

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.